[Cite as *In re D.B.*, 2025-Ohio-5256.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: D.B.

:　　APPEAL NO.　C-250248
　　TRIAL NO.　F/18/346 X

:

:

:　　　　*JUDGMENT ENTRY*

:

This cause was heard upon the appeal, the record, and appellant's brief.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/21/2025 per order of the court.**

**By:**_____
　　　　**Administrative Judge**

[Cite as *In re D.B.*, 2025-Ohio-5256.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


IN RE: D.B.

:

:

:

:

:

APPEAL NO.   C-250248
TRIAL NO.    F/18/346 X


*O P I N I O N*


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 21, 2025


Appellant Mother, pro se.

**NESTOR, Judge.**

{¶1} D.B. has had a relationship with both of his parents since he was born. The record is clear that both Mother and Father love their son and want what is best for him. Mother and Father, however, do not have an amicable relationship. The two have made several motions over the course of D.B.'s life to modify parenting time and to ask the court to find each other in contempt.

{¶2} In this current dispute, Mother filed a motion in January of 2025, to modify parenting time. The juvenile court granted Mother's motion, but it did so by extending Father's parenting time. Unsatisfied with more time for Father, Mother now appeals pro se. For the reasons set forth below, we affirm the judgment of the trial court granting Father more parenting time.

## I. Factual and Procedural History

{¶3} When D.B. was born, his parents had already separated. Mother has been the residential parent for all D.B.'s life. Mother and Father have returned to the juvenile court attempting to find a balance in time that works for all parties.

{¶4} In 2019, Mother and Father returned to the trial court to amend parenting time. The trial court adopted the magistrate's recommendation and ordered "Father shall have the following parenting time: Every other week from after school on Thursday until before school Monday." The order additionally specified holiday time and gave each parent extended parenting time during school breaks. Until recent years, Father was very active in D.B.'s life and wanted more opportunities to spend time with him.

{¶5} Before the 2019 order, Mother and Father had been in court frequently, but there was a stretch where the schedule seemed to be working without court intervention. In 2024, Mother filed the next motion to modify parenting time. Mother

made this motion because Father's partner passed away in 2022 while D.B. was in the home. After the death, Father struggled with his mental health and was not as present with D.B. as he previously had been. Father did not exercise his parenting time consistently and he was detached from both D.B. and Mother.

{¶6}   In 2024, the trial court granted Mother's motion to modify and issued a new schedule replacing the one from 2019. The court was concerned with Father's mental stability, his employment status, and the unknown circumstances of his partner's death. The court ordered the new schedule to be "every other Sunday . . . from 11:00 a.m. to 5:00 p.m." The court weighed all appropriate factors and found this to be in the best interest of the child. Father admitted that he was not as present in D.B.'s life at this time and that he was struggling with depression. Going forward, he intended to be more present and consistent.

{¶7}   In 2025, Mother filed a motion to modify parental time, have Father comply with the last order as written, and keep Father from accessing D.B.'s school records. The trial court entered its order in April. It granted Mother's motion to modify, but not in the way she had hoped. The court granted more time to Father because Father showed improvement since the 2024 order. The new order gave Father "parenting time at least one day each weekend" from 9:00 a.m. to 9:00 p.m. Additionally, D.B. "shall have the ability to choose whether he sees Father during the weekend or not," and D.B. can stay overnight if Father is home. Mother timely appealed this order asserting one assignment of error.

## II. Analysis

{¶8}   Mother argues that the trial court erred by granting additional parenting time to Father without Father demonstrating stability, positive parenting, or consistency. She asserts that because the trial court placed no burden of proof on

4

Father to demonstrate his willingness to provide stability, the trial court should not have granted him more parenting time.

{¶9} Essentially, Mother's assignment of error is that the trial court abused its discretion in granting her January 30, 2025 motion to modify parenting time by extending Father's parenting time. *See Souders v. Souders*, 2022-Ohio-1953, ¶ 6 (1st Dist.); *Helms v. Helms*, 2017-Ohio-2780, ¶ 15 (2d Dist.) ("From our reading of [appellant's] brief, it appears that she intended to assert the argument that the trial court abused its discretion in granting [extended] parenting time to Helms."). Mother argues that Father has not been active in D.B.'s life since his partner passed away in 2022. She argues that he is an addict and cannot provide a safe home for D.B.

{¶10} However, Mother failed to cause the proper transcripts to be included in the record under App.R. 9. Therefore, "this court must presume the regularity of the proceedings." *Ndiathe v. Ndiath*, 2025-Ohio-4828, ¶ 13 (1st Dist.); *see Treasurer v. Scott*, 2022-Ohio-1467, ¶ 16 (1st Dist.), quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) ("'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'"). Accordingly, we affirm the lower court's judgment. *Id.*

{¶11} Regardless of the lack of transcript, "[d]ecisions concerning child-custody matters rest within the sound discretion of the trial court." *In re A.C.*, 2019-Ohio-2891, ¶ 12 (1st Dist.), citing *Miller v. Miller,* 37 Ohio St.3d 71 (1988). In the court below, "[t]he judge, acting as the trier of fact, is in the best position to observe the witnesses, weigh evidence and evaluate testimony." *Id.*, citing *In re Brown*, 98 Ohio App.3d 337 (3d Dist. 1994). On review, "we must not substitute our judgment for that

of the trial court absent an abuse of discretion." *Id.*, citing *Miller* at 74. Because of this, "[w]e will not reverse a trial court's judgment that is supported by competent, credible evidence." *Id.*, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23 (1990). Because there is no transcript, we cannot review whether there was competent, credible evidence.

{¶12} Courts follow R.C. 3109.051 when deciding whether to modify a parenting time schedule. *Helms*, 2017-Ohio-2780, at ¶ 17 (2d Dist.), citing *Braatz v. Braatz*, 85 Ohio St.3d 40 (1999), paragraph one of the syllabus. When revising a parenting time schedule, the trial court considers the factors set forth in R.C. 3109.051 and determines a schedule "that is in the best interest of the child." *Id.* at paragraph two of the syllabus. These factors include the prior interaction and relationship of the child with the child's parents; the geographical location of the residence of each parent and the distance between those residences; the child's and parents' available time; the age of the child; the child's adjustment to home, school, and community; interviews with the child; the health and safety of the child; amount of time available for the child to spend with siblings; the mental and physical health of all parties; each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights; one parent's denial of the other parent's right to parenting time; and any other factor in the best interest of the child. *Helms* at ¶ 17, citing R.C. 3109.051(D).

{¶13} In *Helms*, the Second District affirmed the lower court's modification to parenting time where the lower court went through the relevant factors and made factual findings supporting its decision. *Id.* at ¶ 19. Though the mother moved to modify the parenting time, the court there expanded the father's parenting time because it was "in the son's best interest to have that parenting time" after the father

6

showed improved behaviors. *Id*. at ¶ 18.

**{¶14}** In the current case, the lower court went through each factor in R.C. 3109.051(D) and determined "Father has attempted to be part of the child's life and that he does care about the child." The court also noted concern with Father's past and acknowledged that Father withdrew "from his child's life for an extended period of time," but Father now was presenting positive behaviors. The record reflects the trial court's considerations to determine what is best for D.B. On the record before us, we cannot say it was an abuse of discretion to allow D.B. the opportunity to see Father when D.B. is available.

**{¶15}** Accordingly, we overrule appellant's assignment of error.

### *III. Conclusion*

**{¶16}** Having overruled the appellant's assignment of error, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.